UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES OF THE INDIANA STATE COUNCIL OF PLASTERERS & CEMENT MASONS PENSION FUND, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:19-cv-03315-JMS-MJD ) |
| STEPHANIE LAGLER, et al. | ) ) |
| Defendants. | ) |

**REPORT AND RECOMMMENDATION REGARDING MOTION TO ENFORCE SETTLEMENT AGREEMENT**

This matter is before the Court on a motion seeking to enforce the parties' settlement agreement filed Defendants Tyler Alvarado, B.A., and C.A. (together referred to as the "Alvarado Beneficiaries"), Stephanie Lagler, Christopher Bredlow, and the Estate of Cory Alvarado (the "Estate"). [Dkt. 98.][1] On August 13, 2020, Chief Judge Jane Magnus-Stinson designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 101.] For the reasons set forth below, the Magistrate Judge recommends that the motion to enforce the settlement agreement be **GRANTED**.

**I.  BACKGROUND**

This case arises out of a dispute over who is entitled to benefits payable from a pension fund following the death of Cory Alvarado. The fund is maintained and administered by

---

[1] The motion also seeks an "immediate telephonic status conference." [Dkt. 98.] That request is **denied**, as the Court is able to resolve the issues presented by the parties on the briefs.

Plaintiff Board of Trustees of the Indiana State Council of Plasterers & Cement Masons Pension Fund. Defendants are Cory Alvarado's former spouse, his minor and adult children, and his Estate.

In April 2020, the parties executed a settlement agreement that resolves all of the claims in this case. To comply with Indiana law, the agreement provides that approval for the settlement of the claims of the minor Defendants be sought from the Morgan Superior Court and that such approval is a condition precedent to the remainder of the agreement. The agreement further obligates Plaintiff to do the following within seven days of the fulfillment of the condition precedent:

a. File a motion with the Federal District Court certifying the total current account balance of the Pension Funds, plus any and all interest accrued thereon;

b. Pay the gross amount of the Pension Funds as certified to the Federal District Court minus $8,000, as a set off for attorneys' fees incurred by the Pension Fund, as follows:

   i. 60% of the Pension Funds shall be distributed to Lagler by check payable to Lagler and her counsel, Tony H. Abbott;

   ii. 40% of the Pension Funds shall be distributed to Bredlow and M.S. Alvarado with each receiving 20%, respectively, by check payable to M.S. Alvarado, Bredlow, and Steuerwald, Witham, & Youngs, LLP. It is understood and agreed that the attorneys' fees incurred by the Estate and Bredlow relating to the Lawsuit shall be paid out of the 40% prior to distribution.

[Dkt. 98-1 at 3-4.]

The requisite approval was obtained from the state court and, on June 4, 2020, Plaintiff filed its Certification of Cory Alvarado's Pension Fund Account Balance, certifying that the balance in the account was $175,608.55. [Dkt. 95.] A dispute then arose between the parties because Plaintiff notified Defendants that it was required by law to withhold 20% of the distributions made to Defendants for tax purposes unless the distributions went to a qualified

roll-over account. This delayed the distribution of the funds as Defendants sought advice from tax advisors.[2]

On July 8, 2020, Plaintiff informed Defendants that the balance in the account had decreased by 13.28% to $152,279.06 because of investment losses. Plaintiff based this calculation on the fact that the pension plan provides that "[w]hen you apply for a benefit, the Trustees will determine if any mid-year gain (or loss) is credited to your Account Balance" and that distributions that are effective in January through June "receive the prior year's Account Balance, with no additional gain (or loss) being given for the months of January through June," while distributions that are effective in July through September are credited or debited for "the approximate net rate of return on investments for the first quarter," [Dkt. 98-3], which for 2020 was a loss of 13.28%.

## II. DISCUSSION

Not surprisingly, Defendants object to the fact that Plaintiff intends to pay them 13.28% less than anticipated. Plaintiff frames the issue before the Court as which party should bear the $23,319.49 loss suffered during the first quarter, and argues that Defendants should because it was Defendants who caused the distribution to be delayed past June 30, 2020. That argument is without merit, both factually and legally.

As a factual matter, the Court notes that there has not, in fact, been a $23,319.49 loss between June 30, 2020, a date on which Plaintiff agrees the account balance was $175,608.55, and today. The $23,319.49 loss occurred over the first quarter of 2020; it was simply assessed to

---

[2] It appears that the parties have resolved the dispute regarding the 20% tax withholding, as the Defendants do not ask the Court to resolve it in their motion.

3

the account for distribution purposes as of July 1, 2020. And, in fact, Plaintiff avers that most of those losses were made up for by gains in the second quarter. *See* [Dkt. 99 at 5] ("The Pension has conferred with its third-party administrator, which advised that the funds are expected to have a second quarter gain of 11.56% gross and 11.43% net. If Defendants instead elect to receive the distribution during the months of October through December 2020, they will receive the prior year's Account Balance, plus the approximate rate of return on investments for the first and second quarter combined, for a year to date return of -2.38% net and -2.13% gross."). Thus, any actual financial loss to Plaintiff caused by the delay in payment is clearly much less than $23,319.49.

In any event, as a matter of law Plaintiff's obligation to pay Defendants is governed not by the plan documents,[3] but by the terms of the settlement agreement, which is a binding contract between the parties. "Settlement agreements are governed by the same general principles of contract law as any other agreement." *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003) (citing *Ind. State Highway Comm'n v. Curtis*, 704 N.E. 1015, 1018 (Ind. 1998)). "If a contract's terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning." *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005). Here,

---

[3] Plaintiff's own argument contradicts its position that the plan provisions it cites are relevant to the amount it is required to pay Defendants. The plan provides for mid-year losses or gains to be determined by the Trustees "[w]hen you apply for a benefit." As Plaintiff argues, "Article VIII, Section 1 of the Plan provides '[a] Benefit must be applied for in writing and filed with the Trustees[.]' See Plan language, [Dkt. 99-3] (emphasis added). Here, the Agreement is not an approved form and was not filed with the Trustees." [Dkt. 99 at 4.] Accepting Plaintiff's argument, any payment made pursuant to the settlement agreement will not be made because someone "appl[ied[ for a benefit," because the Defendants have not made such an application. Accordingly, by the plain language of the plan, the provision applicable to crediting or debiting mid-year losses or gains to the amount to be distributed "when you apply for a benefit" is inapplicable.

there is no ambiguity in the relevant language of the settlement agreement; the amount Plaintiff is obligated to pay Defendants is the account balance that it certified to the Court, minus $8,000.00 for Plaintiff's attorney fees. That amount is $167,608.55 ($175,608.55 - $8,000.00). The parties could have agreed that the amount to be paid would be based on the account balance as determined by the plan documents as of the date of the distribution, but they did not; they unequivocally agreed that the amount to be paid would be based on the amount certified to the Court. Plaintiff offers no authority for disregarding the plain language of the parties' contract.

### III. CONCLUSION

For the reasons set forth above, the Magistrate Judge recommends that Defendants' motion to enforce the parties' settlement agreement, [Dkt. 98], be **GRANTED** and that Plaintiff be directed to make the disbursements required by the settlement agreement based on the account balance Plaintiff certified to the Court, $175,608.55.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated: 14 AUG 2020

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all ECF-registered counsel of record via email generated by the Court's ECF system.